Ronald N. Richards (Cal. State Bar No. 176246)
LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, A.P.C.
Email:  ron@ronaldrichards.com
P.O.  Box 11480
Beverly Hills, California 90213
Telephone:   (310) 556-1001
Facsimile:   (310) 277-3325

Geoffrey S. Long (Cal. State Bar No. 187429)
LAW OFFICES OF GEOFFREY LONG, A.P.C.
Email:  glong0607@gmail.com
1601 N. Sepulveda Blvd., No. 729
Manhattan Beach, California 90266
Telephone:   (310) 480-5946
Facsimile:   (310) 796-5663

Attorneys for Plaintiff COASTLINE SANTA MONICA INVESTMENTS, LLC, a
Delaware limited liability company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| COASTLINE SANTA MONICA INVESTMENTS, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> MOHAMMAD HONARKER, an individual, <br><br> Defendant. | Case No.  8:25-cv-00685 <br><br> **COMPLAINT FOR BREACH OF WRITTEN GUARANTY AGREEMENT/CONTRACT** |

COMES NOW Plaintiff COASTLINE SANTA MONICA INVESTMENTS, LLC ("Plaintiff" or "Coastline") for its Complaint against Defendant MOHAMMAD HONARKER ("Defendant" or "Honarker"), and states and alleges as follows:

## PARTIES

1.    Plaintiff is a limited liability company duly formed and existing under the laws of Delaware.  Plaintiff's members are all citizens and residents of either the State of Georgia or the State of Florida.

2.    Defendant Honarker is an individual residing in Irvine, County of Orange, California.

## JURISDICTION AND VENUE ALLEGATIONS

3.    This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. Section 1332 in that the amount in controversy exceeds $75,000, exclusive of interest, Plaintiff is a citizen of Florida and Georgia (Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006)), and Defendant is a citizen/resident of the State of California.

4.    Venue is proper in this Court on the ground that Defendant resides in this judicial district.

## STATEMENT OF FACTS

5.    On or about August 26, 2021, Plaintiff extended a $17,255,316 loan ("Loan") to borrowers Tesoro Redlands De, LLC, Retreat At Laguna Villas, LLC, Sunset Cove Villas, LLC, Duplex At Sleepy Hollow, LLC, Cliff Drive Properties De, LLC, 694 NCH Apartments, LLC, Laguna Festival Center, LLC, 891 Laguna Canyon Road, LLC, 777 At Laguna, LLC, Heisler Laguna, LLC, Laguna Art District Complex, LLC, The Masters Building, LLC, 689 S Coast Hwy, LLC, A 837 Park Avenue, LLC, Laguna HI, LLC, Laguna HW, LLC, Tustin Retail, LLC, Hotel Laguna, LLC, Cliff Village, LLC, 314 S. Harvard De, LLC, and 4110 West 3rd Street De, LLC (collectively, "Borrowers").

6.    The Loan is evidenced by, *inter alia*, a Promissory Note ("Note") in the original principal amount of $17,255,316 by Borrowers as obligors to Plaintiff as the obligee.  A true and correct copy of the Note is attached hereto as **Exhibit "A"** and

incorporated herein by reference.

7. The maturity date of the Loan and Note for payment of all amounts due and owing thereunder was August 25, 2022 ("Maturity Date").

8. Also, on or about August 26, 2021, Defendant entered into and executed a Commercial Guaranty (Guaranty") guaranteeing, *inter alia,* the Borrowers' full and complete payment and performance on, *inter alia,* the Loan and Note. A true and correct copy of the Guaranty is attached hereto as **Exhibit "B"** and incorporated herein by reference.

9. The Guaranty provides, in part:

> Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and any Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

10. The Guaranty was a condition of and additional consideration for the Loan.

11. The full amount of the Loan was funded and disbursed by Plaintiff to Borrowers.

12. Borrohwers defaulted on and breached the Loan and Note by not paying the full amount due and owing thereon by the Maturity Date.

13. The Borrowers also defaulted on and breached the Loan and Note by filing for bankruptcy.

14. Subsequent to Borrowers' defaults and breaches of the Loan and Note, Defendant breached his Guaranty by failing to pay all amounts due and owing on the Loan and Note.

15.    Defendant has limited assets.  Most of his membership interests are in limited liability companies that hold real property that are now in bankruptcy.

16.    Plaintiff alleges it will need to obtain a writ of possession and/or temporary protective to prevent Defendant from further dissipating assets.

## FIRST CLAIM

## For Breach of the Guaranty

17.    Plaintiff realleges and reavers the allegations set forth in paragraphs one through sixteen above as if fully rewritten herein.

18.    On or about August 26, 2021, Defendant executed the Guaranty guaranteeing Borrowers' payment and performance obligations under, *inter alia,* the Loan and Note.

19.    Plaintiff fully performed on the Loan and extended and funded the Loan to Borrowers in the full amount thereof.

20.    Borrowers defaulted on and breached, *inter alia,* the Note.  As of the date of this filing, the amount of at least $29,802,949 in principal and interest is due and owing on the Note and default interest is continuing to accrue.  This amount does not include costs and attorneys' fees incurred by Plaintiff, including in the bankruptcy filed by Borrowers.

21.    In the event of Borrowers' breach and default on the Note, Defendant agreed to be personally liable for Borrowers' default and full and complete payment and performance on the Note, including interest, default interest, costs, and reasonable attorneys' fees.

22.    Defendant has failed to perform on his Guaranty by failing to pay the full amount due and owing by Borrowers on the Note.

23.    Defendant is in breach of his obligations under the Guaranty.  As of the date of this filing, the amount of at least $29,802,949 in principal and interest is due and owing on the Guaranty and default interest is continuing to accrue.  This amount

does not include costs and attorneys' fees incurred by Plaintiff, including in the bankruptcy filed by Borrowers, which are also guaranteed by Defendant.

24.    As a direct result and proximate result of Defendant's breaches of the Guaranty, Plaintiff has been damaged in the amount of at least $29,802,949 according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully requests this Court:

1.    Enter Judgment in favor of Plaintiff against Defendant Mohammad Honarker in the amount of at least $29,802,949;

2.    For all prejudgment interest;

3.    For provisional remedies, including writ of attachment and writ of possession;

4.    For reasonable attorneys' fees pursuant to contract;

5.    For court costs; and

6.    For such other and further relief to which Plaintiff is entitled to under law.

DATED: April 4, 2025        LAW OFFICES OF RONALD RICHARDS AND ASSOCIATES, A.P.C.

By:   /s/ Ronald Richards
Ronald Richards, Esq.
Attorneys for Plaintiff COASTLINE SANTA MONICA INVESTMENTS, LLC

DATED: April 4, 2025        LAW OFFICES OF GEOFFREY LONG, A.P.C.

By:   /s/ Geoffrey Long
Geoffrey Long, Esq.
Attorneys for Plaintiff COASTLINE SANTA MONICA INVESTMENTS, LLC

**EXHIBIT "A"**

# PROMISSORY NOTE

$17,255,316.00                        Newport Beach, California                        August 26, 2021

     1.     FOR VALUE RECEIVED, the undersigned, TESORO REDLANDS DE, LLC, a Delaware limited liability company, RETREAT AT LAGUNA VILLAS, LLC, a Delaware limited liability company, SUNSET COVE VILLAS, LLC, a Delaware limited liability company, DUPLEX AT SLEEPY HOLLOW, LLC, a Delaware limited liability company, CLIFF DRIVE PROPERTIES DE, LLC, a Delaware limited liability company, 694 NCH APARTMENTS, LLC, a Delaware limited liability company, LAGUNA FESTIVAL CENTER, LLC, a Delaware limited liability company, 891 LAGUNA CANYON ROAD, LLC, a Delaware limited liability company, 777 AT LAGUNA, LLC, a Delaware limited liability company, HEISLER LAGUNA, LLC, a Delaware limited liability company, LAGUNA ART DISTRICT COMPLEX, LLC, a Delaware limited liability company, THE MASTERS BUILDING, LLC, a Delaware limited liability company, 689 S COAST HWY, LLC, a Delaware limited liability company, 837 PARK AVENUE, LLC, a Delaware limited liability company, LAGUNA HI, LLC, a Delaware limited liability company, LAGUNA HW, LLC, a Delaware limited liability company, TUSTIN RETAIL, LLC, a California limited liability company HOTEL LAGUNA, LLC, a Delaware limited liability company, CLIFF VILLAGE, LLC, a Delaware limited liability company, 314 S. HARVARD DE, LLC, a Delaware limited liability company, and 4110 WEST 3RD STREET DE, LLC, a Delaware limited liability company (collectively the "**Maker**"), promises to pay to COASTLINE SANTA MONICA INVESTMENTS, LLC ("**Holder**"), at 520 Newport Center Drive, Suite 480, Newport Beach, CA 92660, or at such other place as may be designated in writing by Holder, the principal sum of Seventeen Million Two Hundred Fifty-Five Thousand Three Hundred Sixteen Dollars ($17,255,316.00) in lawful money of the United States of America with interest thereon from August 26, 2021 (the "**Disbursement Date**") at the rate of 10% per annum (the "**Note Rate**"). The maturity date shall be August 25, 2022 (the "**Maturity Date**"). Until the Maturity Date, interest on the unpaid principal amount of this Promissory Note (this "**Note**") shall be payable monthly commencing on September 26, 2021 and continuing on the same day each month until the Maturity Date (the monthly period shall be from the 26th of a month to the 25th of the following month); provided, however, if Cash From Operations of Maker and Cash From Capital Transactions of Maker (measured in the aggregate) is not sufficient to make any monthly payment, then Maker shall make a payment, if any, equal to the aggregate Cash From Operations of Maker and Cash From Capital Transactions of Maker, as applicable, and the portion of the interest not paid (which might be the entire amount) shall be added to the principal hereof and shall accrue interest at the interest rate hereunder. The unpaid principal hereunder and all accrued and unpaid interest shall be due and payable in full on the Maturity Date. Notwithstanding the foregoing, this Note and the unpaid principal and accrued interest shall be due and payable on demand in the event that Maker is in default under the terms, conditions and provisions of this Note. These provisions are in addition to the terms, conditions and provisions of paragraph 2 of this Note or of any other terms, conditions or provisions of this Note.  For purposes hereof, Cash From Operations and Cash From Capital Transactions shall have the meaning therefor with respect to each of the entities constituting Maker hereunder set forth in each of the Operating Agreement of MOM AS Investco LLC, dated as of June 8, 2021, as amended from time to time, the Operating Agreement of MOM BS Investco LLC, dated as of June 8, 2021, as amended from time to time, and the Operating Agreement of MOM CA Investco LLC, dated as of June 8, 2021, as amended from time to time, as applicable; provided however, such Cash From Operations and Cash From Capital Transactions shall be measured on an aggregate basis for all of the entities constituting Maker hereunder.

     2.     If the event of a default by Maker in the payment of any installment or of any amounts whatsoever due under this Note, or any of the other terms of this Note, then, at the option of Holder, the entire unpaid principal amount hereunder, together with all accrued but unpaid interest thereon, shall

immediately become due and payable if Maker has not cured the default within ten (10) days after Holder has given Maker notice of the nature of the default. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. If the default referred to above cannot reasonably be cured within said ten (10) days, Maker shall not be in default thereof if Maker commences to cure the default within said period and diligently and in good faith diligently continues to cure the default until completion. Notwithstanding any provision of this Note, Maker shall not be considered to be in default if Maker has cured or undertaken to cure the breach by Maker of any terms or provision of this Note in accordance with the terms of this paragraph.

3. Maker acknowledges and agrees that late payment to Holder, whether of interest, or of unpaid principal, will cause Holder to incur costs not contemplated by this transaction. Therefore, if any payment is not received by Holder within five (5) days after the date it is due and Maker shall pay to Holder an additional sum of 5% of the overdue amount as a late charge. The parties agree that this late charge represents a reasonable sum considering all of the circumstances existing on the date of this Note and represents a fair and reasonable estimate of the costs that Holder will incur by reason of late payment. The parties further agree that proof of actual damages would be costly or inconvenient. Acceptance of any late charge shall not constitute a waiver of the default with respect to the overdue amount, and shall not prevent Holder from exercising any of the other rights or remedies available to it.

4. Time is material and of the essence hereof. Upon the occurrence of any event of default, without notice, the outstanding principal balance of this Note shall bear interest at the rate of ten percent (10%) per annum in excess of the Note Rate (for a Default Rate, defined below of twenty percent 20%), or, if such increased rate of interest exceeds the amount of interest that be collected from Maker under applicable law, then simple interest at the maximum increased rate of interest which may be collected from Maker under applicable law in excess of the Note Rate (**"Default Rate"**), if either (a) under this Note or any other amount owing hereunder is not received by Holder hereof within ten (10) days after the same becomes due and payable; or (b) any other event of default occurs. The Default Rate shall become effective on the occurrence of an event of default and shall continue through and including the date that Maker cures the event of default to Holder's satisfaction. Maker agrees that such late charge and the Default Rate are reasonable and do not constitute a penalty.

5. If any suit, action or proceeding is commenced by Holder on this Note and Holder is successful in such action, Maker promises to pay, in addition to all costs and disbursements allowed by law, all attorneys' fees reasonably incurred by the Holder.

6. Maker and all endorsers hereof and all others who may become liable, whether primarily or secondarily, for all or any part of this obligation, agree hereby to be jointly and severally bound, and they jointly and severally waive and renounce, to the extent permitted by law, (i) the benefit of all valuation and appraisement privileges as against this debt or any renewal or extension thereof, (ii) except as provided herein, demand, protest, notice of nonpayment, notice of protest, demand and dishonor, notice of intent to accelerate and notice of acceleration, (iii) any and all lack of diligence or delays in collection or enforcement hereof, and (iv) the right to plead any and all statutes of limitations as a defense to any demand on this Note, and they expressly consent to an extension of time, the release of any party liable for this obligation, or any other indulgence or forbearance whatsoever. Any such extension, release, indulgence or forbearance may be made without notice to such party and without in any way affecting the liability of any such party.

7. Any waiver by the Holder of any default hereunder or acceptance of payments after due dates shall not waive the rights of Holder to require prompt payment or timely performance when due of any term or condition under this Note.

8.      THIS NOTE HAS BEEN EXECUTED AND DELIVERED BY MAKER IN THE STATE OF CALIFORNIA AND IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA. IN ANY ACTION BROUGHT UNDER OR ARISING OUT OF THIS NOTE, MAKER HEREBY CONSENTS TO THE JURISDICTION OF ANY COMPETENT COURT WITHIN THE STATE OF CALIFORNIA AND HEREBY CONSENTS TO SERVICE OF PROCESS BY ANY MEANS AUTHORIZED BY CALIFORNIA LAW.

9.      This Note may be prepaid, in whole or in part, at any time or times provided that Maker shall: (i) deliver to Holder written notice of its intention to prepay this Note at least two (2) business days prior to such payment and shall state the prepayment date; (ii) pay to Holder all accrued and unpaid interest (and all other outstanding fees and expenses) through the prepayment date; and (iii) if the prepayment occurs on or prior to the Maturity Date, pay to Holder a prepayment premium equal to the interest payments that are scheduled to be paid through the Maturity Date, reduced by the interest payments paid, if any, by Maker on or before the Maturity Date.

10.     If any provision of this Note is held to be invalid, illegal or unenforceable in any respect, this Note shall be construed as not containing such provision and all other provisions of this Note shall remain in full force and effect, and to this end the provisions of this Note are severable.

11.     It is the intention of Maker and Holder to comply with all applicable usury laws. In furtherance of this intention, all agreements between Maker and Holder are expressly limited to so that in no contingency or event shall the amount paid or agreed to be paid to Holder, for the use, forbearance, or detention of money under this Note, exceed the maximum amount permissible under applicable law. If, due to any circumstance, payment of any amount required under this Note shall be prohibited by law, the obligation to be fulfilled shall be reduced to the maximum allowed by law. If, due to any circumstance, Holder should ever receive as interest an amount which would exceed the highest lawful rate, the amount which would be excessive interest shall be applied to the reduction of this Note and not to the payment of interest. This provision shall control every other provision of all agreements between Maker and Holder.

12.     Maker hereby represents, warrants and guaranties to Holder that that the loan evidenced by this Note was arranged by a real estate broker or mortgage broker duly licensed by the State of California who assisted in this transaction.  The brokers name is Lyones Financial, Inc., and the broker's license number is 01918686. As a condition to the advance of any payments under this Note, Maker must present to Holder the broker's license setting forth the broker's license and license number.

13.     Maker acknowledges that the loan evidenced by this Note shall be used solely for business expansion and other express business purposes, and is not for family, personal or household uses. Maker acknowledges, warrants and guarantees that Maker is in urgent need of these short term funds as evidenced by this Note for the business purposes. If Maker obtains these funds in a timely manner, its business will greatly proposer and Maker will be in a position to repay the unpaid principal hereunder. The nature of Maker's business is as such that once the short term capital shortage is funded by virtue of the loan, Maker's business will yield a high rate of return greatly in excess of the interest to be paid by Maker to Holder in consideration for the loan.  Notwithstanding any claim that may be made at the present time or the future with respect to the rate to be charged by Holder to Maker for this short term loan, Maker acknowledges that Holder would not have made the loan for other than the rate of interest being charged by Holder for the loan.

14.     THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES PERTAINING TO THE SUBJECT MATTER CONTAINED IN IT AND SUPERSEDES ALL PRIOR AND CONTEMPORANEOUS AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS OF THE PARTIES, NO SUPPLEMENT. MODIFICATION, OR AMENDMENT

OF THIS AGREEMENT SHALL BE BINDING UNLESS EXECUTED IN WRITING BY ALL THE PARTIES. NO WAIVER OF ANY OF THE PROVISIONS OF THIS AGREEMENT SHALL BE DEEMED, OR SHALL CONSTITUTE, A WAIVER OF ANY OTHER PROVISION, WHETHER OR NOT SIMILAR, NOR SHALL ANY WAIVER CONSTITUTE A CONTINUING WAIVER. NO WAIVER SHALL BE BINDING UNLESS EXECUTED IN WRITING BY THE PARTY MAKING THE WAIVER. NO ORAL REPRESENTATIONS HAVE BEEN MADE BY THE LENDER CONTRARY TO THE EXPRESS TERMS HEREOF AND THE PARTIES HERETO SO ACKNOWLEDGE THAT THEY ARE RELYING SOLELY ON THE WRITTEN TERMS OF THIS AGREEMENT. BY INITIALING BELOW, EACH OF THE PARTIES HERETO HAVE READ THIS PROVISION, AND ACKNOWLEDGE THAT SAID PROVISION IS TRUE, CORRECT AND COMPLETE.

Maker's Initials: _____DS_____

(Remainder of Page Intentionally Left Blank)

15.    The parties each prefer that any dispute between them be resolved in litigation subject to the jury waiver set forth herein, but the California Supreme Court has held that such pre-dispute jury trial waivers are unenforceable. This Section will be applicable until: (i) the California Supreme Court holds that a pre-dispute jury waiver provision similar to that contained herein is valid or enforceable; or (ii) there is an amendment to California law authorizing pre -dispute jury trial waivers, and as a result such waiver has become enforceable. Accordingly, each of the parties to this Note hereby consents and agrees that (a) any and all disputes arising or related to this Note shall be heard by a referee in accordance with the general reference provisions of California Code of Civil Procedure Section 638, sitting without a jury in the County of Orange County, California, (b) such referee shall hear and determine all of the issues in any dispute (whether of fact or of law), including issues pertaining to a "Provisional Remedy" as defined in California Code of Civil Procedure Section 1281.8, including, without limitation, entering restraining orders, entering temporary restraining orders, issuing preliminary and permanent injunctions and appointing receivers, and shall report a statement of decision; provided that, if during the course of any dispute, any party desires to seek such a provisional remedy at a time when a referee has not yet been appointed or is otherwise unavailable to hear the request for such provisional remedy, then such party may apply to the Orange County Superior Court for such provisional relief and (c) pursuant to California Code of Civil Procedure Section 644(a), judgment may be entered on the decision of such referee in the same manner as if the dispute had been tried directly by a court. The parties shall use their respective commercially reasonable and good faith efforts to agree upon and select such referee, provided that such referee must be a retired state or federal judge and further provided that if the parties cannot agree upon a referee, the referee shall be appointed by the presiding Judge of the Orange County Superior Court, Each party hereto acknowledges that this Section is a material inducement to enter into to this Note. The parties shall share the cost of the referee and reference proceedings equally; provided that, the referee may award attorneys' fees and reimbursement of the referee and reference proceedings fees and costs to the prevailing party, whereupon all referee and reference proceeding fees and charges will be payable by the non-prevailing party (as so determined by the referee). Each party hereto further warrants and represents that it has reviewed this Section with legal counsel of its own choosing or had the opportunity to do so and that it knowingly and voluntarily enters into this Note having had the opportunity to consult with legal counsel. This Section is irrevocable, meaning that it may not be modified either orally or in writing, and that this Section shall apply to any subsequent amendments, renewals, supplements, or modifications to this Note. In the event of litigation, this Note may be filed as evidence of either or both parties to have any and all disputes heard and determined by a referee under California Code of Civil Procedure Section 638.

"WAIVE JURY", To the extent permitted by applicable law, and subject to the consent to judicial reference, the parties hereto hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either party against the other.

By inserting their initials immediately below, the parties hereto acknowledge that each party has read each of the provisions of this Section and warrant and guaranty that the terms, conditions and provisions hereof have been read and are true and correct.

Makers Initials: _DS_

16.    This Note may be executed in one or more counterparts. All such counterparts, when taken together, shall comprise the fully executed Note.

**(SIGNATURE PAGES TO FOLLOW)**

**SIGNATURE PAGE TO**
**PROMISSORY NOTE**
**AUGUST 26, 2021**

MAKER:

LAGUNA HI, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Deba Shyam

Its: Manager

4284842v3    12227372_8

LAGUNA HW, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Deba Shyam

Its: Manager

THE MASTERS BUILDING, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Deba Shyam

Its: Manager

7                    4284842v3                    12227372_8

689 SOUTH COAST HWY, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Deba Shyam

Its: Manager



837 PARK AVENUE, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Deba Shyam

Its: Manager

4284842v3     12227372_8

TUSTIN RETAIL PROPERTIES, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Deba Shyam

Its: Manager


HOTEL LAGUNA, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Deba Shyam

Its: Manager

9                4284842v3                12227372_8

CLIFF VILLAGE, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Deba Shyam

Its: Manager


TESORO REDLANDS DE, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Deba Shyam

Its: Manager

4284842v3          12227372_8

4110 WEST 3RD STREET DE, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By:

Name: Deba Shyam

Its: Manager

314 S. HARVARD DE, LLC

a Delaware limited liability company

By: MOM CA Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM CA Manager LLC

a Delaware limited liability company

Its: Managing Manager

By:

Name: Deba Shyam

Its: Manager

RETREAT AT LAGUNA VILLA, LLC

a Delaware limited liability company

By: MOM AS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM AS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Banayotis Haddad

Its: Manager


SUNSET COVE VILLAS, LLC

a Delaware limited liability company

By: MOM AS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM AS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Banayotis Haddad

Its: Manager

DUPLEX AT SLEEPY HOLLOW, LLC

a Delaware limited liability company

By: MOM AS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM AS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Banayotis Haddad

Its: Manager


CLIFF DRIVE PROPERTIES DE, LLC

a Delaware limited liability company

By: MOM AS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM AS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Banayotis Haddad

Its: Manager

13          4284842v3                12227372_8

694 NCH APARTMENTS, LLC

a Delaware limited liability company

By: MOM AS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM AS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Banayotis Haddad

Its: Manager


HEISLER LAGUNA, LLC

a Delaware limited liability company

By: MOM AS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM AS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Banayotis Haddad

Its: Manager

LAGUNA FESTIVAL CENTER, LLC

a Delaware limited liability company

By: MOM BS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM BS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Jason Everett Miller

Its: Manager


891 LAGUNA CANYON ROAD, LLC

a Delaware limited liability company

By: MOM BS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM BS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By: _____

Name: Jason Everett Miller

Its: Manager

777 AT LAGUNA, LLC

a Delaware limited liability company

By: MOM BS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM BS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By:

Name: Jason Everett Miller

Its: Manager


LAGUNA ART DISTRICT COMPLEX, LLC

a Delaware limited liability company

By: MOM BS Investco LLC

a Delaware limited liability company

Its: Sole Member

By: MOM BS Manager LLC

a Delaware limited liability company

Its: Managing Manager

By:

Name: Jason Everett Miller

Its: Manager

4284842v3      12227372_8

HOLDER:             Coastline Santa Monica Investments, LLC

                    By: _____

# EXHIBIT "B"

# COMMERCIAL GUARANTY

**Borrower:** TESORO REDLANDS DE, LLC, a Delaware limited liability company, RETREAT AT LAGUNA VILLAS, LLC, a Delaware limited liability company, SUNSET COVE VILLAS, LLC, a Delaware limited liability company, DUPLEX AT SLEEPY HOLLOW, LLC, a Delaware limited liability company, CLIFF DRIVE PROPERTIES DE, LLC, a Delaware limited liability company, 694 NCH APARTMENTS, LLC, a Delaware limited liability company, LAGUNA FESTIVAL CENTER, LLC, a Delaware limited liability company, 891 LAGUNA CANYON ROAD, LLC, a Delaware limited liability company, 777 AT LAGUNA, LLC, a Delaware limited liability company, HEISLER LAGUNA, LLC, a Delaware limited liability company, LAGUNA ART DISTRICT COMPLEX, LLC, a Delaware limited liability company, THE MASTERS BUILDING, LLC, a Delaware limited liability company, 689 S COAST HWY, LLC, a Delaware limited liability company, 837 PARK AVENUE, LLC, a Delaware limited liability company, LAGUNA HI, LLC, a Delaware limited liability company, LAGUNA HW, LLC, a Delaware limited liability company, TUSTIN RETAIL, LLC, a California limited liability company HOTEL LAGUNA, LLC, a Delaware limited liability company, CLIFF VILLAGE, LLC, a Delaware limited liability company, 314 S. HARVARD DE, LLC, a Delaware limited liability company, 4110 WEST 3RD STREET DE, LLC, a Delaware limited liability company

**Lender:** Coastline Santa Monica Investments, LLC
520 Newport Center Drive, Suite 480
Newport Beach, CA 92660

**Guarantor:** Mohammad Honarkar
8871 Research Drive
Irvine, CA 92618

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and any Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender pursuant to the terms of the Note. "Indebtedness" includes, without limitation in connection with the Note, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND

SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. Guarantor's obligations under this Guaranty shall be in addition to any of Guarantor's obligations, or any of them, under any other guaranties of the Indebtedness or any other person heretofore or hereafter given to Lender unless such other guaranties are modified or revoked in writing; and this Guarantor shall not, unless provided in this Guaranty, affect, invalidate, or supersede any such other guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**OBLIGATIONS OF MARRIED PERSONS.** Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A)   intentionally omitted; (B)  intentionally omitted; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) except as otherwise actually known to Lender (or any of its affiliates) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) intentionally omitted. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (B) proceed against any person, including) before proceeding against Guarantor; (C) proceed against any collateral for the Indebtedness, including) before proceeding against Guarantor; (D) apply any payments or proceeds received against the Indebtedness in any order; (E) give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the Indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (H) any disability or other defense of Borrower, any other guarantor or surety or any other person; (I) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (J) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; or (L) any statute of limitations in any action under this Guaranty or on the Indebtedness; or (N) intentionally omitted.

Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.

Guarantor waives all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because Borrower's obligation is secured by real property. This means among other things: (N) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower. (O) If Lender forecloses on any real property collateral pledged by Borrower: (1) the amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (2) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all of the Indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**Guarantor's Understanding With Respect To Waivers.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**Subordination of Borrower's Debts to Guarantor.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Guaranty:

**AMENDMENTS.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**ATTORNEYS' FEES; EXPENSES.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**CAPTION HEADINGS.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**GOVERNING LAW. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.**

**INTEGRATION.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**INTERPRETATION.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**NOTICES.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown

near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**ADDITIONAL REQUIREMENTS.**

Personal Financial Statements and Real Estate Schedule.

Tax Returns.

Bank and/or Brokerage House Statements.

Tangible Net Worth.

Net Liquid Assets.

**Definitions.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**BORROWER.** The word "Borrower" means collectively, TESORO REDLANDS DE, LLC, a Delaware limited liability company, RETREAT AT LAGUNA VILLAS, LLC, a Delaware limited liability company, SUNSET COVE VILLAS, LLC, a Delaware limited liability company, DUPLEX AT SLEEPY HOLLOW, LLC, a Delaware limited liability company, CLIFF DRIVE PROPERTIES DE, LLC, a Delaware limited liability company, 694 NCH APARTMENTS, LLC, a Delaware limited liability company, LAGUNA FESTIVAL CENTER, LLC, a Delaware limited liability company, 891 LAGUNA CANYON ROAD, LLC, a Delaware limited liability company, 777 AT LAGUNA, LLC, a Delaware limited liability company, HEISLER LAGUNA, LLC, a Delaware limited liability company, LAGUNA ART DISTRICT COMPLEX, LLC, a Delaware limited liability company, THE MASTERS BUILDING, LLC, a Delaware limited liability company, 689 S COAST HWY, LLC, a Delaware limited liability company, 837 PARK AVENUE, LLC, a Delaware limited liability company, LAGUNA HI, LLC, a Delaware limited liability company, LAGUNA HW, LLC, a Delaware limited liability company, TUSTIN RETAIL, LLC, a California limited liability company HOTEL LAGUNA, LLC, a Delaware limited liability company, CLIFF VILLAGE, LLC, a Delaware limited liability company, 314 S. HARVARD DE, LLC, a Delaware limited liability company, and 4110 WEST 3RD STREET DE, LLC, a Delaware limited liability company, and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GUARANTOR.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Mohammad Honarkar, and in each case, any signer's successors and assigns.

**GUARANTY.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**INDEBTEDNESS.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**LENDER.** The word "Lender" means Coastline Santa Monica Investments, LLC, its successors and assigns.

**NOTE.** The word "Note" means that certain Promissory Note, dated as of August 26, 2021, executed by Borrower in favor of Lender, together with all renewals of, extensions of or modifications of the same.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.**

This Guaranty may be delivered by means of a facsimile machine or by .pdf, .tif, .gif, .jpeg or similar attachment to an electronic mail message or signed electronically using DocuSign or other similar software, shall be treated in all manner and respects as an original and shall be considered to have the same binding legal effect as if it were the original signed version of this Guaranty, delivered in person. This Guaranty may be accepted, executed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act, Title 15, United States Code, Sections 7001 et seq., the Uniform Electronic Transaction Act and any applicable state law. Any document accepted, executed or agreed to in conformity with such laws will be binding on such parties as if it were physically executed.

**THIS GUARANTY IS DATED AS OF AUGUST 26, 2021.**

**GUARANTOR:**

X _____
    Mohammad Honarkar